**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carla G. Young,<br><br>        Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>        Defendant. | No. CV-11-538-PHX-SMM<br><br>**MEMORANDUM OF DECISION<br>AND ORDER** |

Carla G. Young seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her disability insurance benefits under the Social Security Act. (Doc. 1.[1]) Young asks this Court to vacate the Commissioner's denial. (Doc. 17.) The Commissioner filed his Answering Brief (Doc. 20), and Young filed her Reply (Doc. 26). For all of the reasons that follow, the Court finds that the Commissioner's decision is not supported by substantial evidence, and will remand this case to the Commissioner for further administrative action.

## BACKGROUND

Young is a high school graduate. (Tr. 27.) After graduating from high school, she obtained her respiratory therapy certificate from a vocational school. (Id.) Young's

---

[1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on September 9, 2011. (See Doc. 11.)

employment history shows previous work as a respiratory therapist. (Tr. 26-27.) Young filed for disability insurance benefits due to head injury status post motor vehicle accident, the severity of her migraine headaches, right knee meniscus tear, and bilateral hip pain status post industrial injury. (Tr. 14.)

Young filed for Social Security disability insurance benefits on July 18, 2007, when she was 56-years old. (Tr. 12, 26, 54.) In her application, Young alleged that she became disabled as of May 26, 1998. (Tr. 12 (otherwise referred to as "disability onset date").) Her application was denied initially on October 13, 2007, and upon reconsideration on April 16, 2008. (Tr. 54-55.) Young sought further review before an administrative law judge ("ALJ"). On July 7, 2009, the ALJ held a hearing at which Young and vocational expert Thomas M. Mitchell appeared and testified. (Tr. 19-53.) On September 11, 2009, the ALJ concluded that Young was not disabled. (Tr. 14-17.) The ALJ concluded at step two of the sequential evaluation process that Young did not have a severe impairment or combination of impairments. (Id.) This decision became the Commissioner's final decision when the Social Security Appeals Council denied review. (Tr. 1-5.)

**STANDARD OF REVIEW**

When reviewing a Social Security appeal, the Commissioner's decision must be affirmed if it is supported by substantial evidence and he applied the correct legal standards. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the Commissioner's factual determinations, acting through the ALJ, this Court will affirm if there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence

can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

## COMMISSIONER'S DISABILITY EVALUATION PROCESS

To qualify for Social Security disability benefits, Young must show that she suffers from a "medically determinable physical or mental impairment" that prevents her from performing her prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). Further, Young's disabled status must have existed on or before the expiration of her disability insurance, often referred to as the date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, then she is not disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or combinations of impairments that significantly limit the claimant's physical or mental ability to do basic work activities and are thus "severe" within the meaning of the regulation. See id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of

1 Regulation No. 404. If yes, and the impairment meets the requirements for duration under
2 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant fails to meet or equal the
3 criteria or fails the duration requirement, the ALJ's analysis moves to step four. See 20
4 C.F.R. § 404.1520(e). Under step four, the ALJ determines the claimant's residual
5 functional capacity ("RFC"), which is the continued ability of the claimant to perform
6 physical or mental work activities despite his impairment or combination of impairments.
7 See id. The ALJ also determines if the claimant's RFC allows him to perform past relevant
8 work. See id. § 404.1520(f). If yes, the claimant is not disabled. If not, the analysis
9 proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the
10 claimant is not disabled by presenting evidence that the claimant retains sufficient RFC to
11 adjust to perform other jobs that exist in significant numbers either in the region where the
12 claimant lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.
13 § 404.1520(g).

14 In this case, Young's last insured date was December 31, 2003. (Tr. 129.) In
15 determining whether or not Young was disabled, the ALJ first found that Young did not
16 engage in substantial gainful activity during the period between May 26, 1998 and December
17 31, 2003. At step two, the ALJ found that Young's impairments, alone or in combination,
18 were not severe and therefore she was not disabled. (Tr. 14-17.) The ALJ did not complete
19 the remaining steps in the sequential evaluation process. Consequently, this Court's factual
20 analysis and conclusions focus only on step two.

21 **DISCUSSION**

22 **A. Step Two of the Sequential Evaluation Process**

23 In reaching a decision at step two, the ALJ considers the medical severity of the
24 claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment must be (1)
25 medically determinable and (2) have lasted or be expected to last for at least twelve
26 continuous months. Id. The ALJ must consider the combined effect of all of the claimant's
27 impairments without regard to whether each impairment individually was sufficiently severe.
28 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C. § 423(d)(2)(B);

Social Security Regulation ("SSR") 86-8). A severe impairment is one that limits a plaintiff's ability, physical or mental, to conduct basic work activities. Celaya, 332 F.3d at 1180; see also 20 C.F.R. § 404.1520(c). The phrase "basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." SSR 85-28 (1985).

Step two of the sequential evaluation process is regarded as "a de minimis screening device used to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing Smolen, 80 F.3d at 1290). An ALJ may find an impairment or combination of impairments "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Id. at 686-87 (quoting Smolen, 80 F.3d at 1290 and citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)) (emphasis added). Such a finding at step two must be "clearly established by medical evidence." SSR 85-28. Commissioner rulings have established that "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluations step." Webb, 433 F.3d at 687; SSR No. 85-28 ("If such a finding is not clearly established by medical evidence . . . adjudication must continue through the sequential evaluation process."). This Court reviews the ALJ's findings to determine if "the ALJ had substantial evidence to conclude that the medical evidence clearly established that [Young] did not have a medically severe impairment or combination of impairments." See Webb, 433 F.3d at 687; see also Yuckert, 841 F.2d at 306.

**B. ALJ Rationale**

The ALJ concluded that although Young had medically determinable impairments, those impairments did not sufficiently limit Young's ability to do basic work activities for a continuous twelve month period. (Tr. 15-17.) The ALJ gave significant weight to the findings made by state agency medical consultants that Young was not severely disabled. (Id.) The ALJ gave little weight to the opinions of Young's treating physicians and other third-party witnesses who found that Young had significant limitations to her ability to perform basic work activity. (Id.) Having reviewed the record and the parties' arguments,

1 the Court finds that the ALJ's decision at step two is not supported by substantial evidence.
2 See Webb, 433 F.3d at 687; see also SSR 85-28.

### 1. Young's Impairments

As the Court has already summarized, step two of the sequential evaluation process is regarded as "a *de minimis* screening device used to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing Smolen, 80 F.3d at 1290); see also Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An ALJ may find an impairment or combination of impairments "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686-87. That was all Young needed to show the ALJ to prove severity at step two. See Smolen, 80 F.3d at 1290.

In 1991, Young was involved in a serious motor vehicle accident, where her vehicle rolled three (3) times end-to-end on an interstate highway in Montana. (Tr. 28.) Young suffered a serious head injury, a broken wrist and ankle injuries. (Tr. 28.) Subsequent to the car accident, Young began experiencing post-traumatic migraine headaches. (Tr. 477.) At the disability hearing the vocational expert contracted by the Social Security Administration testified that if Ms. Young's testimony regarding her migraine headaches were found credible, her migraine impairment would be considered severe and she could not work. (Tr. 52.)

Following the motor vehicle accident, after Young did not obtain relief through migraine headache medication, she sought and received cranial manipulation treatments. (Tr. 318.) Although the cranial manipulation treatments initially decreased the frequency of her headaches, the benefit was of short duration (Tr. 314), and her migraine headaches gradually increased in frequency and severity. (Tr. 312.) The headaches described by Young, and as indicated in the medical records, produce great pain, are triggered and aggravated by light, and cause nausea. (Tr. 390.)

1    At the hearing, Young testified that she stopped work in 1998 because of her daily
2 migraines that increased in frequency and severity. (Tr. 31.) Young indicated that she can
3 not tolerate light, as it can trigger the onset of a migraine headache. (Id.) When a migraine
4 headache begins, she is incapacitated; she takes her prescription medication and lies down
5 hoping that it will dissipate. (Tr. 31-34.) Her home is always dark. (Tr. 33.) She owns pets
6 but they largely care for themselves. (Id.) She does not go outside in order to do yard work.
7 (Tr. 34.)

8    In December 1994, while working at a hospital as a respiratory therapist, Young
9 suffered an industrial injury to her right knee for which she received workers' compensation
10 benefits. (Tr. 562.) Following right knee surgery in 1995, Industrial Commission records
11 establish a 15% permanent disability to her right leg from the injury. (Id.) In August 2003,
12 she again had right knee surgery to repair torn knee cartilage. (Tr. 444-45.) In late 2003,
13 due to persistent post-surgery knee pain, Young underwent a series of Supartz injections
14 (joint fluid therapy). (Tr. 436-41.) In January 2004, the treating doctor noted ongoing knee
15 pain. (Tr. 528.) Young remained in treatment for right knee pain and went on to require
16 additional surgeries on that knee. (Tr. 514-27, 223-244.) Prior to her date last insured,
17 Young had surgeries on her right knee in 1974, 1995 and 2003. (Tr. 35.)

18    In September 1996, Young suffered another industrial injury to her left hip while
19 working at the hospital. Young was working on paperwork and attempting to sit in a chair.
20 The chair broke and she hurt her hip in the fall. Subsequently, in June 2001, Young was
21 treated by Dr. Michael Brennan for complaints of constant pain. She complained of
22 migraines, pain at the hips, and pain at the knees. She advised Dr. Brennan that she cried
23 from the pain and was unable to work. He diagnosed her with chronic pain. (Tr. 310.)

24    Based on the objective medical evidence, Young's treating physicians, Dr. William
25 Gabbert and Dr. Daniel Manzanares provided the Commissioner with their opinion that
26 Young's disabilities were severe and had more than a minimal effect on her ability to engage
27 in basic work activities. (Tr. 281-83, 560-61.) The ALJ acknowledged that if she were to
28 accept the opinion of Young's treating physicians then her opinion would come down in

1 Young's favor. (Tr. 50-51.)

2 Dr. Gabbert opined that as of December 31, 2003, Young could sit and stand less than
3 two hours each in an 8-hour work day, walk less than one hour in an 8-hour work day, lift
4 and carry less than ten pounds. (Tr. 281.) Gabbert opined that Young suffers limitations that
5 are moderately severe to severe. (Tr. 282.) He demonstrated a familiarity with her medical
6 history that one would expect from a treating physician, noting her near-fatal car accident
7 in 1991, two industrial accidents in 1994 including a torn meniscus in her right knee and
8 injury to her left hip in 1996. He opined to the debilitating nature of her migraine headaches.
9 (Tr. 283.)

10 Dr. Manzanares is Young's current treating physician. (Doc. 17 at 10.) He agreed
11 with Dr. Gabbert that Young's headaches and pain symptoms limit her ability to engage in
12 full-time work-related activity. Based on her ailments, he concluded that Young's degree
13 of restriction was severe as of December 31, 2003. (Tr. 560-61.) In a letter to the
14 Commissioner, Dr. Manzanares clarified that even though he did not treat Young until after
15 her last insured date, the weight of his opinion regarding Young's inability to engage in
16 full-time work-related activity as of December 31, 2003, was also based on the fact that he
17 personally knew and worked with Young from 1993 to 1996 at Phoenix Baptist Hospital,
18 where she was a respiratory therapist and he was a resident physician. (Tr. 209-11.) He
19 knew of and understood her problems with migraines and the work injury that she suffered
20 to her right knee in 1994. The Court observes that Dr. Manzanares' familiarity with Young
21 strengthens his opinion as her treating physician that as of December 31, 2003, Young's
22 medically determinable impairments significantly limited her ability to perform basic work
23 activities for the required durational period.

24 **2. ALJ's Findings Regarding the Opinions of the Medical Experts**

25 In weighing medical source opinions in Social Security cases, the Ninth Circuit
26 distinguishes among three types of physicians: (1) treating physicians, who actually treat
27 the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)
28 non-examining physicians, who neither treat nor examine the claimant. Lester v. Chater, 81

- 8 -

F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. Id. A treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830. Social Security Rules expressly require that a treating doctor's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Ninth Circuit also generally holds that greater weight is to be given to the opinion of an examining physician over and above the opinion of a non-examining physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject the opinion of an examining physician, even if contradicted by a non-examining physician, only by providing specific, legitimate reasons that are supported by substantial evidence in the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

Application

The ALJ concluded that the opinions of Young's treating physicians, Dr. Gabbert and Dr. Manzanares, were entitled to little weight because these doctors did not treat Young between the onset of disability and the date last insured. (Tr. 17.) The ALJ concluded that the opinions of the non-examining state agency medical consultants were entitled to significant weight that Young's impairments were not severe. (Tr. 16.) The ALJ treated their opinions as "expert opinion evidence from a non-examining source." (Id.)

Young asserts that the ALJ legally erred in rejecting the opinions of her treating physicians, Dr. William Gabbert and Dr. Daniel Manzanares. (Doc. 17 at 16-21.) Young argues error because the ALJ failed to provide specific, legitimate reasons that were supported by substantial evidence for discounting the opinions of her treating physicians and

1. relying on the opinions of the non-examining medical consultants. (Id.; Tr. 265, 420.)

The ALJ concluded that little weight should be given to the opinion of a treating physician who did not treat the claimant until after the date last insured. The Court finds that this was not a legitimate reason based on substantial evidence for discounting the opinions of Young's treating physicians. The Commissioner supports the ALJ's holding, relying on Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). Macri is not controlling here. In Macri, the claimant tried to add an additional mental impairment, depression, to his disability application after the ALJ had already issued its ruling. In support of his additional impairment, the claimant submitted a treating psychiatric evaluation that was completed long after his date last insured had expired. The Ninth Circuit discounted the evaluation because a treating psychiatric evaluation conducted prior to the claimant's date last insured did not find that he was depressed. The Ninth Circuit concluded that the claimant failed to establish the additional mental impairment, depression.

Macri did not hold that an ALJ may outrightly discount a treating physician's opinion merely because the treatment and diagnosis are rendered after the date last insured. Rather, in contrast to Macri, the facts here are inapposite. The facts in this case do not show that the ALJ compared Drs. Gabbert and Manzanares against a treating doctor's severity evaluation conducted contemporaneous with Young's date last insured. As of Young's date last insured, the objective medical evidence in her file already established her impairments. It was the severity of those impairments that was being discussed by her treating physician after her date last insured. The Court finds the ALJ legally erred in discounting the opinions of Young's treating physicians. See Andrews, 53 F.3d at 1040-41.

Moreover, Young's treating physician's opinions were discounted in relation to the opinions rendered by non-examining state agency medical consultants. The Court has already set forth the applicable legal standard,

> Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the

- 10 -

record.

Andrews, 53 F.3d at 1041. In this case, the state agency medical consultants were asked to review the file to determine the severity of Young's impairments. (Tr. 265, 420.) These experts did not examine Young nor did they undertake any independent testing prior to rendering their opinions; they simply reviewed the medical evidence in the file. In fact, even if the Court assumes that the state experts had all of the medical evidence that Young's treating doctors had, which is clearly not certain, the Ninth Circuit requires that the ALJ provide specific legitimate reasons for rejecting the opinions of Young's treating physicians and giving weight to the non-examining opinions of the agency experts. The ALJ discounted the treating physicians opinions only because they became Young's treating physician and rendered their opinions after Young's date last insured. This was not a legitimate reason for rejecting their opinions. The medical evidence shows that these treating physicians were completely familiar with Young's medical condition and were attempting to treat all of her impairments. Their opinions were not inconsistent with the symptoms described in Young's medical records prior to December 31, 2003. The evidence in the record shows that neither Young's medical impairments nor her condition had significantly changed since the date last insured.

Further, Young is correct that opinions of the state agency medical consultants could not constitute substantial evidence for rejecting the opinions of her treating physicians. (Tr. 265, 420.) The ALJ failed to provide any explanation why she was crediting the evaluation of the non-examining medical consultants beyond stating that their opinions on severity were given significant weight. (Tr. 16.) Thus, the ALJ did not meet her burden of laying out "specific, legitimate reasons" by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings." See Morgan, 169 F.3d at 600-01. This prevents the Court from finding that the opinions of the non-examining consultants constituted substantial evidence for rejecting the opinions of Young's treating physicians.

### 3. Weight Assigned to Third-Party Reports

The disregard of the testimony of friends and family members is contrary to 20 C.F.R. § 404.1513(e)(2) (1991). Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). According to § 404.1513(e)(2), the Commissioner is required to consider observations by nonmedical sources about how impairments affect a claimant's ability to work. More specifically, the Commissioner's Rulings require the ALJ to consider lay witness testimony in certain types of cases. SSR 88-13 states that where a claimant alleges pain or other symptoms that are "not supported by medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to . . . third-parties who would be likely to have such knowledge." SSR 88-13. The ruling then requires the ALJ to give "full consideration" to such evidence. Id. Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if she gives reasons germane to each witness whose testimony she rejects. See Dodrill, 12 F.3d at 919. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value, see id. ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . this is particularly true of witnesses who view the claimant on a daily basis. . . ."); such lay witnesses will often be family members.

The ALJ rejected most of the third-party evidence, summarily finding that the third-party reports were inconsistent with medical evidence submitted prior to the date last insured. (Tr. 17.) The ALJ rejected outright the third-party evidence that was based on observations of Young post-December 31, 2003. (Id.) Young asserts that it was error for the ALJ to reject the third-party reports of lay witnesses that she provided in support of her claim without providing a germane reason for rejecting the evidence. (Doc. 26 at 12.)

Although the Court agrees with the ALJ that third-party evidence regarding Young's condition post-December 31, 2003 was irrelevant (Tr. 189), the ALJ committed legal error

1 in failing to properly consider and rejecting the third-party evidence submitted in support of
2 the severity of Young's impairments. (Tr. 190-201.) The ALJ was under a duty to fairly
3 consider this evidence. Sprague, 812 F.2d at 1232. In Lewis v. Apfel, 236 F.3d 503, 511-12
4 (9th Cir. 2001), the ALJ properly considered third-party reports and accepted parts that were
5 consistent with the record and rejected the portions that were not. Here, the ALJ did not
6 engage in such careful parsing of the record. Instead, she summarily dismissed all seven
7 reports. (Tr. 190-201.) The bar to dismiss third-party reports is not a high one. However,
8 the ALJ failed to clear even the low standard required to do so here by claiming, without
9 explaining her reasons for disregarding the lay witness testimony, that all of the reports
10 conflict with the objective medical record. At a minimum, the ALJ was legally required to
11 reference those portions of the medical record that were inconsistent with the third-party
12 reporting in order to be able to reject such reports as inconsistent with Young's documented
13 medical history. See also Dodrill, 12 F.3d at 918 (refusing to allow the ALJ to summarily
14 dismiss third-party reports merely on the basis that the reports agreed with the claimant's
15 complaints and the claimant was found not credible, and remanding for the ALJ to articulate
16 specific findings for rejecting the testimony of the third-party witnesses). On remand, based
17 on the record, the ALJ is required to articulate specific findings for rejecting the testimony
18 of the noted third-party witnesses. (Tr. 190-201.)

## CONCLUSION

20 For the foregoing reasons, the decision of the ALJ to reject Young's disability
21 application at step two is based on legal error and not supported by substantial evidence. The
22 decision whether to remand for further proceedings or for immediate payment of benefits is
23 within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).
24 The issue turns on the utility of further proceedings. Here, outstanding issues remain to be
25 resolved before it can be determined that Young is entitled to an award of benefits.
26 Therefore, pursuant to sentence 4 of the Social Security Act, 42 U.S.C. § 405(g), the Court
27 remands this action to the Commissioner for further administrative action in accordance with
28 this decision.

Accordingly,

**IT IS HEREBY ORDERED** that this matter is hereby **REVERSED and REMANDED** to the Commissioner.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 13th day of June, 2012.

Stephen M. McNamee
Senior United States District Judge