**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Carla G. Young, | No. CV-11-538-PHX-SMM |
| Plaintiff, | |
| vs. | **MEMORANDUM OF DECISION AND ORDER** |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Carla G. Young seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her disability insurance benefits under the Social Security Act. (Doc. 1.[1]) Young asks this Court to vacate the Commissioner's denial. (Doc. 17.) The Commissioner filed his Answering Brief (Doc. 20), and Young filed her Reply (Doc. 26). For all of the reasons that follow, the Court finds that the Commissioner's decision is not supported by substantial evidence, and will remand this case to the Commissioner for further administrative action.

## BACKGROUND

Young is a high school graduate. (Tr. 27.) After graduating from high school, she obtained her respiratory therapy certificate from a vocational school. (Id.) Young's

---

[1]"Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on September 9, 2011. (See Doc. 11.)

1   employment history shows previous work as a respiratory therapist. (Tr. 26-27.) Young

2   filed for disability insurance benefits due to head injury status post motor vehicle accident,

3   the severity of her migraine headaches, right knee meniscus tear, and bilateral hip pain status

4   post industrial injury. (Tr. 14.)

5          Young filed for Social Security disability insurance benefits on July 18, 2007, when

6   she was 56-years old. (Tr. 12, 26, 54.) In her application, Young alleged that she became

7   disabled as of May 26, 1998. (Tr. 12 (otherwise referred to as "disability onset date").) Her

8   application was denied initially on October 13, 2007, and upon reconsideration on April 16,

9   2008. (Tr. 54-55.) Young sought further review before an administrative law judge ("ALJ").

10  On July 7, 2009, the ALJ held a hearing at which Young and vocational expert Thomas M.

11  Mitchell appeared and testified. (Tr. 19-53.) On September 11, 2009, the ALJ concluded

12  that Young was not disabled. (Tr. 14-17.) The ALJ concluded at step two of the sequential

13  evaluation process that Young did not have a severe impairment or combination of

14  impairments. (Id.) This decision became the Commissioner's final decision when the Social

15  Security Appeals Council denied review. (Tr. 1-5.)

16                          **STANDARD OF REVIEW**

17         When reviewing a Social Security appeal, the Commissioner's decision must be

18  affirmed if it is supported by substantial evidence and he applied the correct legal standards.

19  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton

20  v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the Commissioner's

21  factual determinations, acting through the ALJ, this Court will affirm if there is substantial

22  evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th

23  Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more

24  than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart,

25  341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.

26  2001). Substantial evidence is relevant evidence which a reasonable person might accept

27  as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011;

28  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence

1    can reasonably support either affirming or reversing the Commissioner's conclusion, the

2    Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d

3    at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is

4    responsible for determining credibility, resolving conflicts in medical testimony, and for

5    resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152,

6    1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although

7    deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253

8    F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

9                    **COMMISSIONER'S DISABILITY EVALUATION PROCESS**

10          To qualify for Social Security disability benefits, Young must show that she suffers

11   from a "medically determinable physical or mental impairment" that prevents her from

12   performing her prior work activities and any other substantial gainful employment that exists

13   in the national economy, and that the impairment "can be expected to result in death or which

14   has lasted or can be expected to last for a continuous period of not less than 12 months." See

15   42 U.S.C. § 423(d)(1)(A). Further, Young's disabled status must have existed on or before

16   the expiration of her disability insurance, often referred to as the date last insured. See Burch

17   v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir.

18   1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

19          Social Security regulations prescribe a five-step evaluation process for an ALJ to

20   determine if a claimant is disabled within the meaning of the Social Security Act. See

21   Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if

22   the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. §

23   404.1520(b). If the claimant is engaged in substantial gainful activity, then she is not

24   disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or

25   combinations of impairments that significantly limit the claimant's physical or mental ability

26   to do basic work activities and are thus "severe" within the meaning of the regulation. See

27   id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets

28   or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of

1    Regulation No. 404.  If yes, and the impairment meets the requirements for duration under

2    20 C.F.R. § 404.1509, the claimant is disabled.  If the claimant fails to meet or equal the

3    criteria or fails the duration requirement, the ALJ's analysis moves to step four.  See 20

4    C.F.R. § 404.1520(e).  Under step four, the ALJ determines the claimant's residual

5    functional capacity ("RFC"), which is the continued ability of the claimant to perform

6    physical or mental work activities despite his impairment or combination of impairments.

7    See id.  The ALJ also determines if the claimant's RFC allows him to perform past relevant

8    work.  See id. § 404.1520(f).  If yes, the claimant is not disabled.  If not, the analysis

9    proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the

10   claimant is not disabled by presenting evidence that the claimant retains sufficient RFC to

11   adjust to perform other jobs that exist in significant numbers either in the region where the

12   claimant lives or in several regions of the country.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

13   § 404.1520(g).

14        In this case, Young's last insured date was December 31, 2003.  (Tr. 129.)  In

15   determining whether or not Young was disabled, the ALJ first found that Young did not

16   engage in substantial gainful activity during the period between May 26, 1998 and December

17   31, 2003.  At step two, the ALJ found that Young's impairments, alone or in combination,

18   were not severe and therefore she was not disabled.  (Tr. 14-17.)  The ALJ did not complete

19   the remaining steps in the sequential evaluation process.  Consequently, this Court's factual

20   analysis and conclusions focus only on step two.

21                              **DISCUSSION**

22        **A.  Step Two of the Sequential Evaluation Process**

23        In reaching a decision at step two, the ALJ considers the medical severity of the

24   claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment must be (1)

25   medically determinable and (2) have lasted or be expected to last for at least twelve

26   continuous months.  Id.  The ALJ must consider the combined effect of all of the claimant's

27   impairments without regard to whether each impairment individually was sufficiently severe.

28   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C. § 423(d)(2)(B);

Social Security Regulation ("SSR") 86-8). A severe impairment is one that limits a plaintiff's ability, physical or mental, to conduct basic work activities. Celaya, 332 F.3d at 1180; see also 20 C.F.R. § 404.1520(c). The phrase "basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." SSR 85-28 (1985).

Step two of the sequential evaluation process is regarded as "a de minimis screening device used to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing Smolen, 80 F.3d at 1290). An ALJ may find an impairment or combination of impairments "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Id. at 686-87 (quoting Smolen, 80 F.3d at 1290 and citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)) (emphasis added). Such a finding at step two must be "clearly established by medical evidence." SSR 85-28. Commissioner rulings have established that "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluations step." Webb, 433 F.3d at 687; SSR No. 85-28 ("If such a finding is not clearly established by medical evidence . . . adjudication must continue through the sequential evaluation process."). This Court reviews the ALJ's findings to determine if "the ALJ had substantial evidence to conclude that the medical evidence clearly established that [Young] did not have a medically severe impairment or combination of impairments." See Webb, 433 F.3d at 687; see also Yuckert, 841 F.2d at 306.

**B. ALJ Rationale**

The ALJ concluded that although Young had medically determinable impairments, those impairments did not sufficiently limit Young's ability to do basic work activities for a continuous twelve month period. (Tr. 15-17.) The ALJ gave significant weight to the findings made by state agency medical consultants that Young was not severely disabled. (Id.) The ALJ gave little weight to the opinions of Young's treating physicians and other third-party witnesses who found that Young had significant limitations to her ability to perform basic work activity. (Id.) Having reviewed the record and the parties' arguments,

1    the Court finds that the ALJ's decision at step two is not supported by substantial evidence.

2    See Webb, 433 F.3d at 687; see also SSR 85-28.

3        **1. Young's Impairments**

4        As the Court has already summarized,  step two of the sequential evaluation process

5    is regarded as "a *de minimis* screening device used to dispose of groundless claims." Webb

6    v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing Smolen, 80 F.3d at 1290); see also

7    Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's

8    application of regulations, numerous appellate courts have imposed a narrow construction

9    upon the severity regulation applied here.").   An ALJ may find an impairment or

10   combination of impairments "not severe *only if* the evidence establishes a slight abnormality

11   that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d

12   at 686-87.  That was all Young needed to show the ALJ to prove severity at step two. See

13   Smolen, 80 F.3d at 1290.

14       In 1991, Young was involved in a serious motor vehicle accident, where her vehicle

15   rolled three (3) times end-to-end on an interstate highway in Montana. (Tr. 28.) Young

16   suffered a serious head injury, a broken wrist and ankle injuries. (Tr. 28.) Subsequent to the

17   car accident, Young began experiencing post-traumatic migraine headaches. (Tr. 477.) At

18   the disability hearing the vocational expert contracted by the Social Security Administration

19   testified that if Ms. Young's testimony regarding her migraine headaches  were found

20   credible, her migraine impairment would be considered severe and she could not work. (Tr.

21   52.)

22       Following the motor vehicle accident, after Young did not obtain relief through

23   migraine headache medication, she sought and received cranial  manipulation treatments.

24   (Tr. 318.) Although the cranial manipulation treatments initially decreased the frequency

25   of her headaches, the benefit was of short duration (Tr. 314), and her migraine headaches

26   gradually increased in frequency and severity.  (Tr. 312.)  The headaches described by

27   Young, and as indicated in the medical records, produce great pain, are triggered and

28   aggravated by light, and cause nausea.  (Tr. 390.)

1    At the hearing, Young testified that she stopped work in 1998 because of her daily
2    migraines that increased in frequency and severity. (Tr. 31.)  Young indicated that she can
3    not tolerate light, as it can trigger the onset of a migraine headache. (Id.)  When a migraine
4    headache begins, she is incapacitated; she takes her prescription medication and lies down
5    hoping that it will dissipate. (Tr. 31-34.)  Her home is always dark. (Tr. 33.)  She owns pets
6    but they largely care for themselves. (Id.)  She does not go outside in order to do yard work.
7    (Tr. 34.)

8    In December 1994, while working at a hospital as a respiratory therapist, Young
9    suffered an industrial injury to her right knee for which she received workers' compensation
10   benefits. (Tr. 562.)  Following right knee surgery in 1995, Industrial Commission records
11   establish a 15% permanent disability to her right leg from the injury. (Id.)  In August 2003,
12   she again had right knee surgery to repair torn knee cartilage. (Tr. 444-45.)  In late 2003,
13   due to persistent post-surgery knee pain, Young underwent a series of Supartz injections
14   (joint fluid therapy). (Tr. 436-41.)  In January 2004, the treating doctor noted ongoing knee
15   pain. (Tr. 528.)  Young remained in treatment for right knee pain and went on to require
16   additional surgeries on that knee. (Tr. 514-27, 223-244.)  Prior to her date last insured,
17   Young had surgeries on her right knee in 1974, 1995 and 2003. (Tr. 35.)

18   In September 1996, Young suffered another industrial injury to her left hip while
19   working at the hospital.  Young was working on paperwork and attempting to sit in a chair.
20   The chair broke and she hurt her hip in the fall.  Subsequently, in June 2001, Young was
21   treated by Dr. Michael Brennan for complaints of constant pain. She complained of
22   migraines, pain at the hips, and pain at the knees. She advised Dr. Brennan that she cried
23   from the pain and was unable to work.  He diagnosed her with chronic pain. (Tr. 310.)

24   Based on the objective medical evidence, Young's treating physicians, Dr. William
25   Gabbert and Dr. Daniel Manzanares provided the Commissioner with their opinion that
26   Young's disabilities were severe and had more than a minimal effect on her ability to engage
27   in basic work activities. (Tr. 281-83, 560-61.)  The ALJ acknowledged that if she were to
28   accept the opinion of Young's treating physicians then her opinion would come down in

1    Young's favor. (Tr. 50-51.)

2           Dr. Gabbert opined that as of December 31, 2003, Young could sit and stand less than

3    two hours each in an 8-hour work day, walk less than one hour in an 8-hour work day, lift

4    and carry less than ten pounds. (Tr. 281.) Gabbert opined that Young suffers limitations that

5    are moderately severe to severe. (Tr. 282.) He demonstrated a familiarity with her medical

6    history that one would expect from a treating physician, noting her near-fatal car accident

7    in 1991, two industrial accidents in 1994 including a torn meniscus in her right knee and

8    injury to her left hip in 1996. He opined to the debilitating nature of her migraine headaches.

9    (Tr. 283.)

10          Dr. Manzanares is Young's current treating physician. (Doc. 17 at 10.)  He agreed

11   with Dr. Gabbert that Young's headaches and pain symptoms limit her ability to engage in

12   full-time work-related activity.  Based on her ailments, he concluded that Young's degree

13   of restriction was severe as of December 31, 2003.  (Tr. 560-61.)  In a letter to the

14   Commissioner, Dr. Manzanares clarified that even though he did not treat Young until after

15   her last insured date, the weight of his opinion regarding Young's inability to engage in

16   full-time work-related activity as of December 31, 2003, was also based on the fact that he

17   personally knew and worked with Young from 1993 to 1996 at Phoenix Baptist Hospital,

18   where she was a respiratory therapist and he was a resident physician. (Tr. 209-11.)  He

19   knew of and understood her problems with migraines and the work injury that she suffered

20   to her right knee in 1994.  The Court observes that Dr. Manzanares' familiarity with Young

21   strengthens his opinion as her treating physician that as of December 31, 2003, Young's

22   medically determinable impairments significantly limited her ability to perform basic work

23   activities for the required durational period.

24          **2.  ALJ's Findings Regarding the Opinions of the Medical Experts**

25          In weighing medical source opinions in Social Security cases, the Ninth Circuit

26   distinguishes among three types of physicians:  (1) treating physicians, who actually treat

27   the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

28   non-examining physicians, who neither treat nor examine the claimant. Lester v. Chater, 81

F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. Id. A treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830. Social Security Rules expressly require that a treating doctor's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Ninth Circuit also generally holds that greater weight is to be given to the opinion of an examining physician over and above the opinion of a non-examining physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject the opinion of an examining physician, even if contradicted by a non-examining physician, only by providing specific, legitimate reasons that are supported by substantial evidence in the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

Application

The ALJ concluded that the opinions of Young's treating physicians, Dr. Gabbert and Dr. Manzanares, were entitled to little weight because these doctors did not treat Young between the onset of disability and the date last insured. (Tr. 17.) The ALJ concluded that the opinions of the non-examining state agency medical consultants were entitled to significant weight that Young's impairments were not severe. (Tr. 16.) The ALJ treated their opinions as "expert opinion evidence from a non-examining source." (Id.)

Young asserts that the ALJ legally erred in rejecting the opinions of her treating physicians, Dr. William Gabbert and Dr. Daniel Manzanares. (Doc. 17 at 16-21.) Young argues error because the ALJ failed to provide specific, legitimate reasons that were supported by substantial evidence for discounting the opinions of her treating physicians and

1    relying on the opinions of the non-examining medical consultants.  (<u>Id.</u>; Tr. 265, 420.)

2          The ALJ concluded that little weight should be given to the opinion of a treating

3    physician who did not treat the claimant until after the date last insured.  The Court finds that

4    this was not a legitimate reason based on substantial evidence for discounting the opinions

5    of Young's treating physicians.  The Commissioner supports the ALJ's holding, relying on

6    <u>Macri v. Chater</u>, 93 F.3d 540, 545 (9th Cir. 1996).  <u>Macri</u> is not controlling here.  In <u>Macri</u>,

7    the claimant tried to add an additional mental impairment, depression, to his disability

8    application after the ALJ had already issued its ruling.  In support of his additional

9    impairment, the claimant submitted a treating psychiatric evaluation that was completed long

10   after his date last insured had expired.  The Ninth Circuit discounted the evaluation because

11   a treating psychiatric evaluation conducted prior to the claimant's date last insured did not

12   find that he was depressed.  The Ninth Circuit concluded that the claimant failed to establish

13   the additional mental impairment, depression.

14         <u>Macri</u> did not hold that an ALJ may outrightly discount a treating physician's opinion

15   merely because the treatment and diagnosis are rendered after the date last insured.  Rather,

16   in contrast to <u>Macri</u>, the facts here are inapposite.  The facts in this case do not show that the

17   ALJ compared Drs. Gabbert and Manzanares against a treating doctor's severity evaluation

18   conducted contemporaneous with Young's date last insured.  As of Young's date last

19   insured, the objective medical evidence in her file already established her impairments.  It

20   was the severity of those impairments that was being discussed by her treating physician

21   after her date last insured.  The Court finds the ALJ legally erred in discounting the opinions

22   of Young's treating physicians.  <u>See</u> <u>Andrews</u>, 53 F.3d at 1040-41.

23         Moreover, Young's treating physician's opinions were discounted in relation to the

24   opinions rendered by non-examining state agency medical consultants.  The Court has

25   already set forth the applicable legal standard,

26         Where, on the other hand, a nontreating source's opinion contradicts that of
            the treating physician but is not based on independent clinical findings, or
27          rests on clinical findings also considered by the treating physician, the opinion
            of the treating physician may be rejected only if the ALJ gives specific,
28          legitimate reasons for doing so that are based on substantial evidence in the

1    record.

2    Andrews, 53 F.3d at 1041.  In this case, the state agency medical consultants were asked to

3    review the file to determine the severity of Young's impairments.  (Tr. 265, 420.)  These

4    experts did not examine Young nor did they undertake any independent testing prior to

5    rendering their opinions; they simply reviewed the medical evidence in the file.  In fact, even

6    if the Court assumes that the state experts had all of the medical evidence that Young's

7    treating doctors had, which is clearly not certain, the Ninth Circuit requires that the ALJ

8    provide specific legitimate reasons for rejecting the opinions of Young's treating physicians

9    and giving weight to the non-examining opinions of the agency experts.  The ALJ

10   discounted the treating physicians opinions only because they became Young's treating

11   physician and rendered their opinions after Young's date last insured.  This was not a

12   legitimate reason for rejecting their opinions.  The medical evidence shows that these

13   treating physicians were completely familiar with Young's medical condition and were

14   attempting to treat all of her impairments.  Their opinions were not inconsistent with the

15   symptoms described in Young's medical records prior to December 31, 2003.  The evidence

16   in the record shows that neither Young's medical impairments nor her condition had

17   significantly changed since the date last insured.

18        Further, Young is correct that opinions of the state agency medical consultants could

19   not constitute substantial evidence for rejecting the opinions of her treating physicians.  (Tr.

20   265, 420.)  The ALJ failed to provide any explanation why she was crediting the evaluation

21   of the non-examining medical consultants beyond stating that their opinions on severity were

22   given significant weight.  (Tr. 16.)  Thus, the ALJ did not meet her burden of laying out

23   "specific, legitimate reasons" by providing "a detailed and thorough summary of the facts

24   and conflicting clinical evidence, stating her interpretation thereof, and making findings."

25   See Morgan, 169 F.3d at 600-01.  This prevents the Court from finding that the opinions of

26   the non-examining consultants constituted substantial evidence for rejecting the opinions of

27   Young's treating physicians.

28

1

### 3. Weight Assigned to Third-Party Reports

2      The disregard of the testimony of friends and family members is contrary to 20 C.F.R.

3  § 404.1513(e)(2) (1991).  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Sprague v.

4  Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).   According to § 404.1513(e)(2), the

5  Commissioner is required to consider observations by nonmedical sources about how

6  impairments affect a claimant's ability to work.  More specifically, the Commissioner's

7  Rulings require the ALJ to consider lay witness testimony in certain types of cases.  SSR

8  88-13 states that where a claimant alleges pain or other symptoms that are "not supported

9  by medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily

10  activities by directing specific inquiries about the pain and its effects to . . . third-parties who

11  would be likely to have such knowledge." SSR 88-13. The ruling then requires the ALJ to

12  give "full consideration" to such evidence.  Id.  Having been directed to consider the

13  testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the

14  testimony of lay witnesses only if she gives reasons germane to each witness whose

15  testimony she rejects.  See Dodrill, 12 F.3d at 919.  The fact that a lay witness is a family

16  member cannot be a ground for rejecting his or her testimony. To the contrary, testimony

17  from lay witnesses who see the claimant every day is of particular value, see id. ("[a]n

18  eyewitness can often tell whether someone is suffering or merely malingering . . . this is

19  particularly true of witnesses who view the claimant on a daily basis. . . ."); such lay

20  witnesses will often be family members.

21      The ALJ rejected most of the third-party evidence, summarily finding that the third-

22  party reports were inconsistent with medical evidence submitted prior to the date last

23  insured.  (Tr. 17.)  The ALJ rejected outright the third-party evidence that was based on

24  observations of Young post-December 31, 2003.  (Id.)  Young asserts that it was error for

25  the ALJ to reject the third-party reports of lay witnesses that she provided in support of her

26  claim without providing a germane reason for rejecting the evidence.  (Doc. 26 at 12.)

27      Although the Court agrees with the ALJ that third-party evidence regarding Young's

28  condition post-December 31, 2003 was irrelevant (Tr. 189), the ALJ committed legal error

1   in failing to properly consider and rejecting the third-party evidence submitted in support of

2   the severity of Young's impairments. (Tr. 190-201.) The ALJ was under a duty to fairly

3   consider this evidence. Sprague, 812 F.2d at 1232. In Lewis v. Apfel, 236 F.3d 503, 511-12

4   (9th Cir. 2001), the ALJ properly considered third-party reports and accepted parts that were

5   consistent with the record and rejected the portions that were not. Here, the ALJ did not

6   engage in such careful parsing of the record. Instead, she summarily dismissed all seven

7   reports. (Tr. 190-201.) The bar to dismiss third-party reports is not a high one. However,

8   the ALJ failed to clear even the low standard required to do so here by claiming, without

9   explaining her reasons for disregarding the lay witness testimony, that all of the reports

10  conflict with the objective medical record. At a minimum, the ALJ was legally required to

11  reference those portions of the medical record that were inconsistent with the third-party

12  reporting in order to be able to reject such reports as inconsistent with Young's documented

13  medical history. See also Dodrill, 12 F.3d at 918 (refusing to allow the ALJ to summarily

14  dismiss third-party reports merely on the basis that the reports agreed with the claimant's

15  complaints and the claimant was found not credible, and remanding for the ALJ to articulate

16  specific findings for rejecting the testimony of the third-party witnesses). On remand, based

17  on the record, the ALJ is required to articulate specific findings for rejecting the testimony

18  of the noted third-party witnesses. (Tr. 190-201.)

19                                   **CONCLUSION**

20          For the foregoing reasons, the decision of the ALJ to reject Young's disability

21  application at step two is based on legal error and not supported by substantial evidence. The

22  decision whether to remand for further proceedings or for immediate payment of benefits is

23  within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

24  The issue turns on the utility of further proceedings. Here, outstanding issues remain to be

25  resolved before it can be determined that Young is entitled to an award of benefits.

26  Therefore, pursuant to sentence 4 of the Social Security Act, 42 U.S.C. § 405(g), the Court

27  remands this action to the Commissioner for further administrative action in accordance with

28  this decision.

Accordingly,

**IT IS HEREBY ORDERED** that this matter is hereby **REVERSED and REMANDED** to the Commissioner.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 13th day of June, 2012.

Stephen M. McNamee
Senior United States District Judge

- 14 -